UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHAWN JOHNSON | CIVIL ACTION |
| VERSUS | NO. 15-2630 |
| VOLUNTEER BARGE & TRANSPORT, INC. | SECTION "N" (3) |

**ORDER AND REASONS**

Presently before the court is the motion for summary judgment (Rec. Doc. 28) filed by Defendants Volunteer Barge & Transport, Inc. and Jaymar Barge LLC (collectively "Volunteer"). Now, having considered the parties' submissions and the applicable law, **IT IS ORDERED** that the motion is **GRANTED**. Thus, **IT IS FURTHER ORDERED** that the claims addressed by the instant motion are **DISMISSED WITH PREJUDICE**.

I.  BACKGROUND

The instant suit arises out of an injury to Plaintiff Shawn Johnson ("Johnson"), a longshoreman employed by Coastal Cargo Company, Inc. ("Coastal"), which occurred while Johnson was working in the cargo hold of an unmanned barge.[1] At the time of the accident, Volunteer was the manager and owner *pro hac vice* of the barge.

On June 17, 2014, Johnson was a part of a stevedoring team that was hired to offload the cargo of pre-bundled aluminum plates from the cargo ship M/V DAYDREAM BELIEVER, which was docked alongside the Harmony Street Wharf. Specifically, Johnson was working on the floor of the barge, unhooking the bundles of aluminum plates that had been lowered into the

---

[1] Johnson claims that he was injured in either CHB 9432 or CHB 9955, which are both owned by Volunteer. (Rec. Doc. 10). Volunteer and Johnson both point out that there has been conflicting testimony and evidence regarding which barge was being loaded at the time the accident occurred.

1

barge by a crane. Johnson had just unhooked a bundle of the aluminum plates when a stack of four bundles that had been set down on the floor of the barge toppled and fell, striking Johnson's left leg, ankle, and foot.

Johnson filed his Petition for Damages in Civil District Court for the Parish of Orleans on June 17, 2015. In his petition, Johnson alleged that his injuries were caused by Volunteer's negligence. He alleges that Volunteer provided an unsafe and unseaworthy vessel, failed to provide a safe place to work, failed to properly maintain the vessel, and failed to properly warn of the unsafe conditions of the vessel. (Rec. Doc. 1-2). Thereafter, Volunteer removed the case to this court on July 16, 2015.

Volunteer puts forth two arguments in its motion for summary judgment: first, there is no genuine issue of material fact supporting Johnson's claim that a defective condition in the barge, namely the uneven nature or "wash boarding" of the barge floor, caused the accident; and second, even assuming that the uneven nature of the floor was a defective condition that caused the accident, this condition was open and obvious.

## II.  STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court shall grant summary judgment "if the movant shows that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is material if it "might affect the outcome of the suit under governing law." *Id*.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the movant may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *See* Fed. R. Civ. P. 56(c)(3) ("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### III.    LAW AND ANALYSIS

The issues presently before the Court on summary judgment hinge on Johnson's rights against Volunteer as the vessel owner under 33 U.S.C. § 905(b). Pursuant to § 905(b) of the Longshore Harbor Worker's Compensation Act ("LHWCA"), a stevedore may bring suit against a vessel in the event of an injury that is caused by the negligence of the vessel. 33 U.S.C. § 905(b). In *Scindia Steam Nav. Co., Ltd. v. De Los Santos*, 451 U.S. 156, 165, 101 S. Ct. 1614, 68 L. Ed. 2d 1 (1981), the Supreme Court limited the duties that vessel owners owe to longshoreman under § 905(b). A vessel owner's three duties include: (1) the "turnover duty," (2)

the duty to "exercise reasonable care in the areas of the ship under the active control of the vessel," and (3) the "duty to intervene." *Id*. at 167; *see also Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98, 114 S. Ct. 2057, 129 L. Ed. 2d 78 (1994). In the instant matter, Johnson's allegations only involve the vessel owner's turnover duty.

The turnover duty involves the shipowner's responsibility prior to or at the commencement of the stevedore's activities. *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008). This duty encompasses two responsibilities of the vessel owner. First, the vessel owner must "exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety." *Id*. Second, the vessel owner must warn the stevedore of any hidden or latent hazards that are known to the vessel owner or should have been known to it. *Id*. However, this duty to warn of hidden dangers is narrow. *Id*. The vessel owner does not have a duty to warn of dangers that are either: "(1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering." *Id*. In addition, the Fifth Circuit has held that a defect is considered open and obvious if the longshoreman knew of the defect. *See Pimental v. Ltd Canadian Pacific Bul*, 965 F.2d 161, 167 (5th Cir. 1992).

With regards to the "open and obvious" defense, Johnson argues that courts have held that the obviousness of the defect does not absolve the vessel owner of its duty to turn over the ship in a condition that experienced stevedores may operate safely. (Rec. Doc. 32). However, the Fifth Circuit rejected this argument in *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392-96 (5th Cir. 2008). In *Kirksey*, the question for the court to consider was "whether the district court erred in allowing Kirksey to recover from the shipowner, given the open and obvious nature of the defect in the cargo stow and the corresponding danger it created." *Id*. at 392.

In addressing Kirksey's arguments, the Fifth Circuit cited to *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98, 114 S. Ct. 2057, 129 L. Ed. 2d 78 (1994). *Id*. The court first explained that the *Howlett* decision confirmed the availability of the "open and obvious" defense to the turnover duty to warn. *Id*. at 393. However, *Howlett* did not definitively decide whether the "open and obvious" defense was available to the vessel owner's duty to turn over a reasonably safe vessel. *Id*. The court reasoned that while *Howlett* was not dispositive on this particular issue, the Supreme Court's analysis was helpful in its resolution. *Id*. After analyzing the *Howlett* reasoning, the court concluded that "most of the same considerations *Howlett* gives for permitting the shipowner to assert an open and obvious defense to a failure to warn claim strongly support making the same defense available to the shipowner defending against a claim based on the general failure to provide a safe ship based on defects in the stow." *Id*. at 393-94.

The court further cited *Riggs v. Scindia Steam Navigation Co.*, 8 F.3d 1442 (9th Cir. 1993), to support its conclusion. *Id*. at 394. The court explained that in *Riggs*, the district court had granted summary judgment in favor of the vessel owner, "holding that the vessel had no legal duty to prevent or alleviate the unsafe conditions in the cargo hold because the dangers were open and obvious to the longshore workers." *Id.* Thereafter, the Ninth Circuit reversed, holding that the open and obvious defense does not alleviate the duty of a vessel owner to provide a reasonably safe vessel. *Id*. However, the Supreme Court granted certiorari, vacating the judgment and remanding the case to the Ninth Circuit "for further consideration in light of *Howlett*." *Id*. Thereafter, the Ninth Circuit affirmed the district court's grant of summary judgment in light of the *Howlett* decision. *Id*. After discussing *Riggs*, the Fifth Circuit stated that the court was "persuaded that the Ninth Circuit correctly concluded that the reasoning, if not the letter of the *Howlett* opinion, compelled this result." *Id*. at 394-95.

Therefore, in light of the Fifth Circuit's reasoning in *Kirksey*, the "open and obvious" defense applies to the turnover duty to provide a reasonably safe vessel. Consequently, the Court must address whether the uneven nature of the barge floor in the instant case is an open and obvious hazard. While both Plaintiff and Intervenors present evidence regarding the cause of accident and the allegedly defective nature of the barge floor, there is no evidence suggesting that the dips or "potholes" in the floor were not open and obvious to the stevedoring team. In fact, all parties present evidence that the condition of the floor was both visible to the naked untrained eye, and is a condition that stevedores expect to encounter when working on barges. Given the extensive deposition testimony evidencing the stevedoring team's awareness[2] of the dips in the floor, Volunteer has met its burden in showing that the unevenness of the floor was an open and obvious condition of the barge.

Furthermore, the risk of stacking aluminum bundles on an uneven floor was an open and obvious hazard. The deposition testimony of several members of the stevedoring team working with this particular barge reveals that there were concerns regarding the height of the stacks of cargo that were coming into the barge. Johnson, as well as other members of the stevedoring team, recounted that the stacks of aluminum plates seemed unsteady when placed onto the barge floor and would appear to be leaning or tilted. In addition, the undisputed evidence reveals that several members of the team working in that barge had expressed their concerns regarding the stacks of aluminum plates to either the foreman, Maurice Lathers, or to the superintendent, Frank Macaluso. Therefore, the combination of the dips within the barge floor and the act of stacking

---

[2] The evidence reveals that the stevedoring team had been experiencing problems with the bundles of cargo becoming unsteady once lowered onto the barge floor on the day prior to Johnson's accident. Therefore, this previous experience with the bundles and the subsequent complaints from the stevedoring team regarding the unsteadiness of the stacks of cargo evidence their awareness of a potential hazard.

7

the aluminum plates as high as four bundles was an obvious hazard to the members of the stevedoring team working within the barge.

However, the "open and obvious" defense may not be available when "the longshoreman's only alternatives to facing the hazard are duly impracticable or time-consuming or would force him to leave the job." *Moore v. M/V ANGELA*, 353 F.3d 376, 381 (5th Cir. 2003) (internal citations omitted).[3] In the instant case, Johnson points to no evidence that suggests that there were no reasonable alternatives to loading the cargo onto that particular barge floor. Johnson has suggested that the only alternative to loading the barges would have been to reject the barges supplied by Volunteer, have them moved, and order new barges. (Rec. Doc. 32). However, there is no evidence to support this contention; rather, the evidence presented by Volunteer indicates otherwise. Specifically, several members of the stevedoring team on this barge found the barge to be crowded when Coastal increased the number of loads being lowered into the barge at one time. Furthermore, Volunteer has pointed to evidence (and common sense would dictate) that the members of the stevedoring team believed that the unsteadiness of the bundles could have been decreased by simply lowering the number of bundles within a stack from four to three bundles. Therefore, the Court is not persuaded that there were no reasonable alternatives to loading the cargo onto this barge floor based upon the evidence presented by the parties.

IV.   CONCLUSION

As stated herein, **IT IS ORDERED** that summary judgment is **GRANTED** in favor of Defendants Volunteer Barge & Transport, Inc. and Jaymar Barge LLC. Accordingly, **IT IS**

---

[3] This "no alternative" exception has generally only been applied when the hazard existed in the ship's equipment or was created by the shipowner through its negligence. *Kirksey*, 535 F.3d at 396. Here, since the alleged hazard was the floor of the barge, rather than a defect in the cargo stow, the "no alternative" exception would apply with regards to the "open and obvious" defense.

**FURTHER ORDERED** that the claims asserted by Plaintiff, Shawn Johnson, are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 21st day of September 2016.

_____
**KURT D. ENGELHARDT**
**United States District Judge**